BILL L. SMITH & SANDRA L. SMITH, Petitioners v. OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 11502-78.
United States Tax Court
T.C. Memo 1980-29; 1980 Tax Ct. Memo LEXIS 556; 39 T.C.M. (CCH) 975; T.C.M. (RIA) 80029; January 30, 1980, Filed Bill L. Smith, pro se. Lawrence D. Garr, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1975 in the amount of $2,240.19. The issues for decision are: (1) whether petitioners were "away from home" and therefore entitled to a deduction for travel (including meals and lodging) as claimed on their income tax return in the amount of $8,829.55 for the year 1975; (2) depending *557 on the resolution of this issue, there is a question as to whether child care expenses claimed in the amount of $1,070 should be disallowed under the income limitation set forth in section 1.214(A)-2(c), Income Tax Regs.
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners are Bill L. Smith and Sandra L. Smith, husband and wife.
They timely filed their joint Federal income tax return for the calendar year 1975 with the Director of the Baltimore District, Internal Revenue Service. At the time the petition in this case was filed, they resided at Route 4, Box 169, Cumberland, Maryland. On their 1975 income tax return petitioners claimed an adjustment to income in the amount of $8,829.55 for business travel expenses which they claimed were incurred away from home. In the notice of deficiency these business travel expenses were disallowed in full. Petitioners do not contest $2,061 of the $8,829.55 deduction. They contend the correct amount of business expenses should be $6,768.55 and that the higher claimed figure resulted from a mathematical *558 error. A deduction for child care expenses in the amount of $1,070 was also disallowed. This disallowance was technical and resulted from the increase to adjusted gross income determined by the Commissioner. The parties agree that the amount of this deduction is dependent upon the outcome of the adjustment to adjusted gross income resulting from resolution of the claimed business travel expenses.
For a number of years Bill Smith was employed by the District of Columbia Unemployment Compensation Commission as an attorney in the General Counsel's Office. In late August or early September 1974 he resigned and opened a private law practice in Washington, D.C. In December of 1974, Bill Smith closed his private law practice. In November of 1974, petitioners purchased a house in Cumberland, Maryland. The house was in need of major renovation and was then not habitable. When in Cumberland, Maryland, petitioners stayed in a house owned by Sandra Smith's parents which was located a few hundred yards from the house they had purchased. Bill Smith was not admitted to the Maryland Bar, never took the Maryland Bar admissions examination, and did not find work in the Cumberland, Maryland *559 area. In January of 1975, he applied for unemployment benefits. When his application arrived at the District of Columbia Unemployment Compensation Commission (hereinafter "Commission"), the General Counsel's Office offered him a position in which he would perform the same duties as he had previously performed. Bill Smith accepted the offer and was employed pursuant to a 90-day appointment effective February 4, 1975. His employment was renewed for additional 90-day periods on May 6, 1975, August 6, 1975, and November 19, 1975. Thereafter, in February of 1976, Mr. Smith's employment at the Commission was formally made permanent. In 1975, Cumberland, Maryland was a depressed area and it was financially impossible for petitioners to live there. Mr. Smith did not want his position to be formally made permanent notwithstanding any added retirement benefits he might secure because his services were so necessary to the Commission that he thought he could hold out for more money.
In 1975, due to the recession and the fact that many people were unemployed and filing claims for unemployment compensation, the staffing for the Commission approximately doubled. It was doubtful that *560 Mr. Smith would have been terminated against his will at the end of any of the 90-day appointments. Mr. Smith could have been formally designated a permanent employee at least as early as the end of his first 90-day appointment. Sandra Smith accepted an appointment with the District of Columbia Unemployment Compensation Commission for not more than 700 hours effective February 18, 1975 to be performed within a one-year period. Prior to acceptance of this position, Sandra Smith had been unemployed for an extended period of time. In February of 1975, Bill and Sandra Smith stayed at the Hotel National, 1808 I Street, N.W., Washington, D.C. On March 5, 1975, the Smiths signed a lease for an unfurnished apartment located at 412 3rd Street, N.E., Washington, D.C., which was effective until August 31, 1975. The lease was not renewed; however, it was informally extended for two months. In November of 1975, petitioners rented a townhouse in Gaithersburg, Maryland. ULTIMATE FINDINGS OF FACT Bill Smith's employment in Washington, D.C. in 1975 was of an indefinite nature, as opposed to temporary. The petitioners' tax home in 1975 was in the Washington, D.C. metropolitan area. *561 OPINION The petitioners have not favored us with briefs and have not been helpful in the way of legal argument. Nevertheless, we have made a careful analysis of the record in this case and our Ultimate Findings are the result of that study. We have no doubt that the Washington, D.C. metropolitan area was petitioners' tax home in 1975 and accordingly that they were not "away from home" during that year. Generally, taxpayers are expected to maintain their homes at or near their place of employment and only when they are required to travel away from such place are the expenses for lodging deductible. Foote v. Commissioner, 67 T.C. 1 (1976). As the respondent says: "An exception to this rule is applicable where the taxpayers' employment is temporary, as opposed to indefinite." Commissioner v. Puerifoy, 254 F.2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958); Bochner v. Commissioner, 67 T.C. 824 (1977). Under the principles outlined in the above cases, we cannot find that Cumberland, Maryland was petitioners' tax home. Prior to 1975, petitioners lives for many years in the Washington, D.C. metropolitan area *562 while Bill worked at the District of Columbia Unemployment Compensation Commission. While petitioners purchased a house in Cumberland, it was in need of major renovation and was not habitable. In fact, in the month they spent there (January of 1975) after Mr. Smith closed his law practice in Washington, D.C. and prior to his reemployment with the Commission, petitioners resided not in their house but with Sandra's parents. By their own admission Cumberland was a depressed area offering little hope of employment. Moreover, not only did they not secure employment in Cumberland, Bill never even took the Maryland Bar exam and could not have practiced law in Maryland. Under these circumstances, regardless of petitioners' alleged intent, their contacts with Cumberland were insufficient to render it their tax home. Bochner v. Commissioner, supra at 828 and 829; Schaefer v. United States, an unreported case ( M.D. Fla. 1976, 76-1 USTC par. 83,619, 37 AFTR 2d 76-883). In Bochner, supra, the Tax Court found that taxpayer's contacts with his previously established tax home to be so minimal that it ceased to be his tax home. The *563 Court held, 67 T.C. at 828-829: Focusing on the objective evidence, petitioner's contacts with Glendora can be characterized as minimal. He ceased to be present in that city after mid-January. He had no business connection with Glendora. In light of the large number of layoffs, his prospects for future employment in that area lacked promise. He had no family there. His sole connection with the area was his apartment which he retained because he desired to return to Glendora. This, in and of itself, is insufficient to justify a decision in petitioner's favor. To hold otherwise would place petitioner's home where his heart lies and render section 162(a)(2) a vehicle by which to deduct the full spectrum of one's personal and living expenses. Frank D. Scotten, T.C. Memo. 1966-206, affd. 391 F.2d 274 (5th Cir. 1968). Moreover, we think it clear that in light of the lack of employment opportunities in the vicinity of Glendora, petitioner's election to retain his apartment rather than to move to greener pastures was made despite rather than because of his trade or business. * * * Where one seeks to remain, as petitioner has done, in *564 a place affording little or no job opportunities, such choice is not business related. Simply put, any duplicate expenses, i.e., rental costs, incurred by petitioner were the result of considerations personal to him and are nondeductible under section 262. [Fn. ref. omitted.] Like Mr. Bochner, the Smiths had no business connections with their claimed tax home; Cumberland, like Glendora, lacked a potential for employment; and the only connection maintained was a house and an alleged desire to return. In Bochner, supra, such a contact was insufficient. In the present case where the house was not even habitable, the contract is similarly inadequate. A taxpayer's tax home is in the vicinity of that person's employment. As both petitioners in this case were employed only in the District of Columbia, their tax home was not and could not be located in Cumberland, Maryland. Foote v. Commissioner, supra, at 5. Petitioners' employment in the District of Columbia was of a substantial and indefinite nature, as opposed to temporary, and the claimed expenses would therefore be personal and nondeductible under section 262, I.R.C. 1954. Commissioner v. Puerifoy, supra; *565 Jones v. Commissioner, 444 F.2d 508 (5th Cir. 1971). Bill's job in 1975 was as an attorney performing the same functions for the same employer as he had done for many years previously. His job was essentially secure. While the formal categorization of his employment was "temporary," it was unlikely that he would have been terminated at any time in light of the Commission's heavy workload and dramatically increased staffing. Moreover, Bill could have been designated as a permanent employee at least as early as the end of his first 90-day appointment. He was not designated as a permanent employee at his own request; Bill was holding out for more money. In 1975, Sandra worked on a 700-hour temporary appointment in Washington, D.C. She had not worked for years previously and the 700-hour appointment was her only employment in 1975. Like her husband, she did not secure any employment in Cumberland and had absolutely no economic ties to that region. We acknowledge that the above reasoning is based almost totally on the respondent's analysis of the case and our restudy of the cases in this familiar field. We do not know of any way that the petitioners can win on *566 this record. The respondent's determination is sustained. Decision will be entered for the respondent.